FILES, J.
 

 This case involves the. effect of a landowner’s abandonment of certain rights of access to an abutting street, and the legality of a subsequent resolution of the city council authorizing the opening of a new entrance to the property. The trial court upheld both the abandonment and the resolution opening a new entrance.
 

 Plaintiff, a nearby resident, appeals because, he says, the city should not have allowed a new entrance. Intervener, as tenant of the property, appeals because, he says, the owner’s abandonment of access rights was invalid.
 

 The ease was tried on stipulated facts plus exhibits, and the appeal comes here on an agreed statement.
 

 The land in question was, prior to January 1, 1953, in unincorporated territory and owned in fee by Mrs. Jenison. On that date the owner leased to Lansdale for 99 years. On March 12,1953, Lansdale petitioned the county planning commission for rezoning. This application remained pending until July 5, 1955, when a county ordinance was adopted granting a change to C-4 and P on certain conditions regarding access rights.
 

 On November 1, 1954, at the request of Lansdale, Mrs. Jenison executed, as a part of a tract map, a certificate which read in part as follows: “As a dedication to public use . . . we hereby abandon all easements of vehicular ingress and egress to the said Woodruff Avenue, except the three private access strips as shown on this map ... so that, owners of lots
 
 *588
 
 abutting these highways during such time will have no rights of vehicular access whatever in the highway as such, except the general easement of travel which belongs to the whole public____”
 

 On January 25, 1955, the board of supervisors of the county accepted this offer of dedication, and on January 26 the map and certificate were recorded in the office of the county recorder.
 

 On February 1, 1955, Lansdale assigned his lease to the intervener Stonewood, a partnership in which Lansdale was one of the partners. The lease was recorded May 12, 1955.
 

 On June 7, 1955, with the full and prior knowledge of ■Stonewood, Mrs. Jenison executed an instrument whereby she relinquished to the county one of the three private access rights to Woodruff Avenue. To this instrument was attached a formal acceptance on behalf of the county, and the whole was recorded in the office of the county recorder on July 5, 1955. This was done to conform to the conditions of the ordinance which was adopted on July 5 changing the zoning.
 

 On December 17, 1956, the City of Downey became incorporated, including within its boundaries the property in question and the adjacent Woodruff Avenue. The parties are agreed that the city then succeeded to the interest and right of the county arising from the foregoing transactions.
 

 Stonewood proceeded with the development of a shopping center on the subject property. It requested the city council to authorize additional entrances to the property. In response to this request the council did, on June 30, 1958, adopt Eesolution No: 261 as follows:
 

 “Whereas, certain access rights adjoining the Stonewood Shopping Center along the westerly side of Woodruff Avenue between Firestone Boulevard and Cecilia Street and adjoining said center along the southerly side of Cecilia Street between Lakewood Boulevard and Chaney Avenue were previously dedicated to the County of Los Angeles and subsequently passed to the City of Downey; and
 

 “Whereas, the Stonewood Shopping Center requests that it be authorized and permitted to use a portion of such access rights so dedicated; and
 

 “Whereas, the City Council finds that it is necessary that certain portions of such access rights be used to permit the proper flow of traffic into and' out of said shopping center and to facilitate the traffic movement along streets adjacent to'said •shopping center;
 

 
 *589
 
 “Now, Therefore, the City Council of the City of Downey Does Resolve as Follows:
 

 “
 
 Section 1.
 
 That the Stonewood Shopping Center is hereby permitted and authorized to develop and use the openings described as:...
 

 “ (b) Commencing at a point 160 feet southwesterly of the intersection of the northeasterly boundary of Tract No. 20115, as described in (a) above and the northwesterly line parallel to and 30 feet northwest of the center line of Woodruff Avenue as shown on the aforementioned Tract No. 20115 and extending a distance of 60 feet southwesterly along said parallel line 30 feet northwest of Woodruff Avenue.
 

 “Said above described openings to be utilized for the ingress and egress from said Shopping Center for itself and its customers on condition that they be improved in a manner approved by the Director of Public Works of the City of Downey and maintained in a good safe, and usable condition at all times. ’ ’
 

 Plaintiff, a taxpayer who resides on Woodruff Avenue, then commenced this action in the superior court against the City of Downey. He sought an adjudication that Resolution 261 was void. Stonewood then sought and obtained leave of court to intervene. The complaint in intervention prayed that plaintiff be denied any relief, and that the court adjudge that Stonewood’s rights of access “are not limited by the Access Rights of Respondent [i.e., the city].” The city’s answer to the complaint in intervention prayed a judgment declaring the rights of the city to be paramount.
 

 The parties entered into a stipulation of facts which made it unnecessary to take oral testimony. After hearing argument the trial court made findings of fact and conclusions of law and gave judgment against plaintiff on the complaint and against intervener on its prayer for affirmative relief. The judgment specifically declared that Resolution 261 is valid and that the right of access to the property in question is subject to the control of the City of Downey, and such control is paramount to the rights claimed by any other.
 

 Although the evidentiary facts were received by stipulation, the trial judge acted as a fact-finder in drawing inferences to arrive at the ultimate facts upon which the judgment rests. The trial court’s findings, where based upon permissible inferences, are binding on appeal.
 
 (Crisman
 
 v.
 
 Lanterman,
 
 149 Cal. 647, 655 [87 P. 89,117 Am.St.Rep. 167].)
 

 
 *590
 
 Before discussing the contentions of the parties it is helpful to consider the nature of the property interest here involved. The owner of property which abuts on a public street has, as an incident of such ownership, a right or easement of access. It is separate and distinct from the right of the general public in and to the street. “The right of access has been defined as extending to a use of the road for purposes of ingress and egress to his property by such modes of conveyance and travel as are appropriate to the highway and in such manner as is customary or reasonable. [Citation.] It is more extensive than a mere opportunity to go into the street immediately in front of one’s property.”
 
 (People
 
 v.
 
 Russell,
 
 48 Cal.2d 189, 195 [309 P.2d 10].) At the same time the state, its subdivisions and municipalities, exercising governmental powers, may limit or regulate access to streets and highways, but such regulation may not go so far as to destroy the property right. (See
 
 People
 
 v.
 
 Murray,
 
 172 Cal.App.2d 219, 225-227 [342 P.2d 485];
 
 Genazzi
 
 v.
 
 County of Marin,
 
 88 Cal.App. 545 [263 P. 825].)
 

 Where a property owner abandons his easement of access to a particular street the effect is to place the matter of access entirely in the hands of the governing body which controls the street. Where a property owner is seeking permission to build a shopping center adjacent to private residences, the significance of such a relinquishment is readily seen. The governing body may then weigh the demands of the commercial interests for easy access against the desires of the neighbors for quiet streets, consider the convenience of the general public and the effect upon the traffic flow on adjacent streets, and then place the entrances where it thinks best, free from any claim of “property right” by the commercial landowner.
 

 Plaintiff argues that Resolution 261 is invalid because the city failed to follow the procedure described in Government Code, sections 50430 to 50433 (the Public Service Easements Vacation Law) or the procedure prescribed in Streets and Highways Code, sections 8300 to 8331 (the Street Vacation Act). It is true that neither procedure was followed. The answer is that the city did not vacate any street or easement, and did hot abandon or relinquish any property or interest or right which it owned. On the contrary the city, by adopting Resolution 261, was exercising its lawful powers to regulate the access onto Woodruff Avenue.
 

 Plaintiff’s argument seems to assume that a relin
 
 *591
 
 quishment of an abutter’s easement of access means that no one will again be allowed to cross the line between the private property and the street. Actually the relinquishment means only that the property owner and those claiming under him have given up the right to require customary and reasonable access to the particular street.
 

 Eesolution 261 does not constitute a gift of public property. The recitals which accompany the resolution indicate that the city found that it was necessary to use this new entrance to facilitate traffic movement along the adjacent streets. This is a proper city purpose. There is no evidence that the council acted arbitrarily or unreasonably in finding that the public interest required this action.
 

 The intervener Stonewood contends that the abandonment of access rights by Mrs. Jenison should not be binding upon it as a tenant under a 99-year lease. The stipulation of facts states that the relinquishment of access set forth on the tract map was executed by Mrs. Jenison at the request of the lessee, Lansdale. The subsequent relinquishment was executed June 7, 1955, by Mrs. Jenison with the full and prior knowledge of Stonewood and without objection from Stonewood. The stipulation shows and the trial court found that the second relinquishment was done to conform to the conditions imposed by the planning commission in granting the change of zone which Lansdale had requested.
 

 Stonewood now asks the court to say that only the reversionary interest of Mrs. Jenison, and not the 99-year term of the tenant, is bound by the abandonment. In other words, the dedication would not be effective until January 1, 2052, when the lease expires.
 

 The blunt truth is that Stonewood is trying to go back on the deal it made with the county to have its property rezoned for a shopping center. The county relied upon the effectiveness of the surrender of access rights when it allowed the development of the shopping center to begin. The stipulated facts also show that the City of Downey removed certain traffic-channeling devices in further reliance.
 

 Counsel argues that there could be no estoppel because the county knew of the existence of the lease and hence the county was not deceived. The deception relates to the fact, if it were a fact, that Mrs. Jenison was not acting for the lessee. Beyond any question the county was led to believe that Mrs. Jenison, as fee owner, was acting on behalf of all persons interested in the property. The trial court concluded
 
 *592
 
 that Stonewood is estopped to attack this abandonment. No other conclusion would be consistent with common sense and rudimentary justice.
 

 Stonewood argues further that Mrs. Jenison’s abandonment of the easement is invalid because, it claims, the tract map did not describe a legal “subdivision” and therefore the map did not constitute a proper “dedication” under the Subdivision Act. The fact is, however, that the map and the subsequent document were executed, accepted and recorded; and these instruments clearly memorialize the intent of the parties, including Stonewood, that the easement of access be abandoned. This is enough. It is too late for Stone-wood to say that they used the wrong procedure.
 

 Plaintiff has raised the point that Stonewood should not have been allowed to intervene and that, after intervention, should not have been allowed to enlarge the issues by seeking a declaration that Mrs. Jenison’s abandonment was ineffective. We need not consider that question now. Since the decision is adverse to Stonewood, plaintiff is not prejudiced. Both Stonewood and defendant city sought a declaration as between themselves, and they do not now say it was improper for the court to have decided the issue.
 

 The judgment is affirmed.
 

 Shinn, P. J., and Ford, J., concurred.
 

 A petition for a rehearing was denied July 31, 1962, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied September 5, 1962.