[Civ. No. 32688. Second Dist., Div. Two. May 20, 1969.]

MONOLITH PORTLAND CEMENT COMPANY, Plaintiff and Appellant, v. AMERICAN HOME ASSURANCE COMPANY, Defendant, Cross-complainant and Respondent; MARYLAND CASUALTY COMPANY, Cross-defendant and Appellant.

Chase, Rotchford, Drukker, Bogust & Tucker, Henry J. Bogust and Lawrence O. de Coster for Plaintiff and Appellant and for Cross-defendant and Appellant.

Jarrett & Woodhead, Frank W. Woodhead and Henry F. Walker for Defendant, Cross-complainant and Respondent.

ROTH, P. J.—In this action for declaratory relief the judgment appealed from by Maryland Casualty Company (Maryland) prorates a judgment recovered by one Freeman, an employee of McKay Trucking Company (McKay) against Monolith Portland Cement Company (Monolith) and the defense cost thereof paid by Maryland between Maryland and American Home Insurance Company (American), respective insurers of Monolith and McKay.

This appeal is on the judgment roll which contains findings of fact and conclusions of law. The judgment in pertinent part recites: "And evidence both oral and documentary and by stipulation having been offered in evidence and the matter having been . . . submitted for decision, . . . and the court having . . . made . . . findings . . . ; ." Except for an additional stipulation augmenting the record the facts as recited in the findings and clarified or amplified by the additional stipulation are binding on this court.

Monolith, a quarrier and processor of dry bulk cement, sold a truck load thereof to a customer in Capistrano and prior to May 20, 1964, contacted the dispatcher of McKay for, among other things, the use of one of its trucks and a driver to transport the dry bulk cement from its plant at Monolith, California, to its destination Capistrano, California.

On May 20, 1964, Freeman, one of the employee drivers of McKay, appeared on the Monolith premises with an empty truck to be loaded by Monolith employees with the cement shipment. Monolith used a hose to load the dry cement and in the process of loading the McKay truck the hose was negligently managed by employees of Monolith, as a consequence

of which it became loose and unattached causing great quantities of dry cement to be sprayed and thrown over the face and body of Freeman, the driver. Freeman sued Monolith and recovered a judgment.

The trial court in the judgment herein appealed from prorated Freeman's judgment and the cost incurred therein, 5/6th to Maryland and 1/6 to American.

On the simple facts outlined if Maryland and American were not involved it would appear that Freeman, injured in the course of his employment, had a claim for workmen's compensation against McKay and a cause of action against Monolith predicated on negligence.

The action at bench arises by reason of two several comprehensive automobile liability policies, one issued by Maryland insuring Monolith with a limit of $500,000 and the other by American insuring McKay with a limit of $100,000.

It is settled that in actions such as this involving a policy requiring proration with other insurance the fact that Monolith's carrier Maryland would ordinarily be solely responsible for Monolith's negligence is of no moment. (*Meritplan Ins. Co.* v. *Universal Underwriters Ins. Co.,* 247 Cal.App.2d 451, 457 [55 Cal.Rptr. 561]; *Traders etc. Ins. Co.* v. *Pacific Emp. Ins. Co.,* 130 Cal.App.2d 158, 165-166 [278 P.2d 493]; see also *Pacific Emp. Ins. Co.* v. *Maryland Cas. Co.,* 65 Cal.2d 318, 328-329 [54 Cal.Rptr. 385].)

In respect of the several policies of Maryland and American the court found that American was obligated to McKay: " 'To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damage because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.' "

American concedes that "use" in its policy includes "the loading and unloading . . ." of the truck and further that since Monolith's employees were loading the truck with the consent of McKay the coverage of its policy extended to the negligent acts of Monolith's employees at the time and place involved.

In respect of Maryland's coverage of Monolith the court found that its policy of insurance provides:

" 'The unqualified word "insured" includes the names insured and also includes any person while using an owned

automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, . . . .

"Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer as follows:

"(1) Owned Automobile—an automobile owned by the named insured;

"(2) Hired Automobile—an automobile used under contract in behalf of, or loaned to, the named insured. . . .

"(3) Non-Owned Automobile—any other automobile.

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance.' "

The Maryland policy, too, obligated it to Monolith to pay as damages because of bodily injury sustained by any person and arising out of the "use" of any automobile.

The Maryland policy expressly provides that "use" includes "loading." ▓▓▓ It is generally established by law that use includes loading and unloading even in the absence of an express provision therefor. (*U. S. Steel Corp.* v. *Transport Indem. Co.*, 241 Cal.App.2d 461, 465 [50 Cal.Rptr. 576]; *American Auto Ins. Co.* v. *American Fid. & Cas. Co.*, 106 Cal.App.2d 630, 635-636 [235 P.2d 645].)

Each policy obligated the insurer to defend any action brought against its insured.

When Freeman brought this action against Monolith, Maryland requested American to defend. The trial court found:

". . . American refused to defend Monolith . . . and Maryland demanded that it do so. . . . A bona fide justiciable controversy exists between American and Maryland as to the duty . . . to indemnify Monolith and its alleged negligent employees in said tort action."

The record as augmented by stipulation shows that Freeman recovered a judgment of $30,423.90 against Monolith and

that Maryland's defense costs of said action amounted to $4,834.08.

The trial court concluded and the judgment in effect provided: "The insurance policy of . . . American and . . . Maryland, as related to the accident of May 20, 1964 and the tort action ensuing therefrom, each provided primary coverage for the defense and liability of Monolith and its employees.

"The loss, if any, and the reasonable cost of defending said tort action shall be pro-rated and borne in the ratio of 5/6ths by . . . Maryland and 1/6th by . . . American."

 American insists that the McKay truck was a "hired" automobile under the Maryland policy and that the judgment properly prorated the liability of each company.

Maryland insists that under its policy the truck in question was a "non-owned automobile," there was no coverage of its named insured, the truck was not a "hired" automobile and that it has no liability.

Crucial, therefore, is the meaning ascribed to "hired automobile."

Maryland predicates its argument that the truck was not "hired" upon the definition set out in 12 Couch on Insurance 2d, sections 45:262-45:266, wherein the author says: "To constitute a hired automobile there must be a separate contract of hiring or renting the automobile. . . . Accordingly, an automobile owned by an independent contractor who contracts with the insured to haul goods for him is not a hired automobile, as it was owned by the contractor and was not hired or rented by the insured or by anyone else."

 It is established that, "wherever it is semantically permissible, the contract will be given such construction as will most fairly achieve the object of securing indemnity to the insured for the losses to which the insurance relates" (*Prickett* v. *Royal Ins. Co., Ltd.*, 56 Cal.2d 234, 237 [14 Cal. Rptr. 675, 363 P.2d 907] ; *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914] ; and, if any doubt exists which "relates to the extent or fact of coverage, whether as to peril insured against [citations], the amount of liability [citations], or the person or persons protected [citations], the language will be understood in its most inclusive sense for the benefit of the insured." (*Continental Cas. Co., supra*; *McConnell* v. *Underwriters at Lloyds*, 56 Cal.2d 637, 640 [16 Cal.Rptr. 362, 365 P.2d 418] ;

*Gray* v. *Zurich Ins. Co.*, 65 Cal.2d 263, 269, footnote 3 [54 Cal.Rptr. 104, 419 P.2d 168]; *Fageol Truck & Coach Co.* v. *Pacific Indem. Co.*, 18 Cal.2d 731, 747 [117 P.2d 661].)

The truck was "used under contract in behalf of the named insured" and, therefore, comes within this portion of Maryland's definition, which must be construed and applied, if semantically permissible, so as to afford, not to defeat, coverage.

The Monolith order was for "1 load Type 1 Bulk Cement" and it further stated, "This is part of a single document covering two truck loads moving on a single BL. . . ." The very use of "truck" indicates that the contract contemplated use of the McKay truck. Indeed, the Monolith order specifically refers to "McKay #38," which was the truck involved. The Monolith order further contained the statement: "Instructions to Truck Driver—Delivery Time Tonight" and it bore the date "5-20-64," the date of the accident. McKay's "Frt. Bill" showed that it was for "Type 1" from Monolith to Groty's Ready Mix and that "Truck No. 38" was the truck. Monolith's check to McKay paid the price for "trucking." And it was Monolith's bulk dry cement which Monolith was having taken to Groty's Ready Mix through use of McKay truck #38.

There was a contract calling for use of the McKay truck #38, a special type for carriage of the bulk dry commodity, to be loaded at the Monolith plant by the Monolith employees, and thereafter taken on truck #38 to Groty's Ready Mix. Truck #38 was being used in behalf of Monolith under the contract.

In *Bituminous Cas. Corp.* v. *Travelers Ins. Co.* (D.Minn.) 122 F.Supp. 197, the court considered facts and policies comparable to those before us. There, Williams was engaged in general hauling and trucking business. His insurer was Travelers. He primarily hauled lime from the Rochester Quarry Company to various farms. At the time of the accident, Williams was at the premises of Rochester getting his truck loaded with lime. Williams was injured during loading operations through a power shovel operated by an employee of Rochester. The Bituminous insurance policy contained the same definitions of owned, hired, and non-owned automobiles as are contained in the Maryland policy. "The question arises, therefore, whether the Williams automobile was a hired automobile within the meaning of the Bituminous policy." In

answering this question affirmatively, it was held at pages 202-203:

". . . Therefore, not only a loaned automobile but any automobile used under contract in behalf of . . . Quarry Company would be considered a hired automobile within the definition which the policy contains. . . . The Court is constrained to find, therefore, that the language used in this definition is broad and comprehensive, and the interpretation accorded thereto should be free from any narrow or strict construction. The Williams truck was a hired automobile and not a non-owned automobile, as these terms are defined in the Bituminous policy.

". . . . . . . . . . . .

"From the foregoing, it would appear that both Bituminous and Travelers provided coverage for the Williams accident — Bituminous under its comprehensive policy, together with the provision affording coverage for the loading of the Williams truck, and Travelers by reason of the use of the Williams truck by the Quarry Company and [its employee] Wegman, with the consent of Williams, and the accident resulting during the process of the loading. The liability of each insurer stems from Wegman's negligence . . ."

It further was held that, under the "other insurance" provisions of the respective policies, the two insurers were to prorate their indemnity obligation with respect to Williams' accident and the liability of the Quarry Company to him. (*St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co.*, 244 Cal.App.2d 826, 835 [53 Cal.Rptr. 650]; *Woodrich Constr. Co.* v. *Indemnity Ins. Co.*, 252 Minn. 86 [89 N.W.2d 412, 421-422]; *Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 32-33 [17 Cal.Rptr. 12, 366 P.2d 455].)

The trial court found that the McKay truck was a "hired automobile" as defined by Maryland's policy. Under the principles of construction, in the cited cases, when such determination by the trial court is supported by substantial evidence and reasonable inferences drawn therefrom, it is conclusive on appeal. (See, e.g., *Black* v. *Black*, 91 Cal.App.2d 328, 334-335 [204 P.2d 950]; *In re Jost*, 117 Cal.App.2d 379, 387-388 [256 P.2d 71]; *Stevenson* v. *City of Downey*, 205 Cal.App.2d 585, 589 [23 Cal.Rptr. 127].)

At the time of the accident, the McKay truck was, as found by the trial court, under the dominion and control of Monolith. Monolith was using the truck by loading it with cement

for delivery to its consignee. It must be implied that after delivery of the cement the truck would be returned to McKay.

Even assuming the absence of a hiring contract, it must be concluded that the McKay truck was "loaned to"[1] Monolith for the purpose of the shipment to Groty's Ready Mix. From that conclusion, it follows that, as to Monolith on the day of the accident, the McKay truck was a "hired automobile"[2] as defined in the Maryland policy, whether by reason of a hiring contract or as a loaned vehicle. Under the principles of con-

[1]"Lend" is defined in Webster's Unabridged New International Dictionary, Second Edition, as follows: "To allow the custody and use of, on condition of the return of the same; to grant to another for temporary use, on the express condition that the thing itself be returned."

[2]Appellants contend that the arrangements between Monolith and McKay for the use of truck No. 38, called only for trucking services and that to hold, as the trial court did, that the truck was a "hired automobile," one must conclude that any shipper who arranges for his property to be delivered, by road, rail, sea or air, is hiring or chartering the vehicle or vessel transporting such property. Such a conclusion follows only if the shipper, like Monolith, had the vehicle or vessel in its possession or custody and under its dominion or control. The two cases cited are clearly distinguishable. In *Government Employees Ins. Co.* v. *St. Paul Fire etc. Ins. Co.*, 243 Cal.App.2d 186 [52 Cal.Rptr. 317], the court was required to determine whether a station wagon involved in an accident was a "hired automobile." The station wagon was owned by the driver's father. The driver, in the course of his employment, made trips by automobile between his employer's two stores. For that purpose, the driver used his own car. However, on the day of the accident the driver did not have his car and borrowed his father's station wagon. The court determined that the station wagon was not, as to the driver's employer, a "hired automobile" since the record showed that "the only contract relating to the use of the vehicle was that of a bailment between [the father] as bailor and [his son] as bailee . . ." (at page 191.) Stated otherwise, in that case, the only arrangement was between the owner of the vehicle and its driver, whereas in the case before us there was a hiring contract or loan between the insured, Monolith, and the owner of the truck, McKay.

In the other case cited by appellants, *Continental Cas. Co.* v. *Hartford Acc. & Indem. Co.*, 213 Cal.App.2d 78 [28 Cal.Rptr. 606], the automobile involved in the accident was rented by an employee in his own name rather than in the name of the employer who was the insured under the policy there in issue. The court found that there was no basis in the facts from which it could conclude that when the employee rented the car he was acting for or with the consent of his employer. It further found from the facts there stipulated that the employee was to obtain transportation on his own account and personal responsibility and that his employer would not be responsible therefor, even though the employee was acting within the scope of his employment and the employer might subsequently reimburse the employee for travel expenses. The court then held that the automobile rented by the employee was not a "hired automobile" under the employer's insurance policy.

The element missing in *Government Employees* and *Continental*, which is present in the record before us, is a contract between the insured and the owner of the vehicle involved in the accident which brings such vehicle within the definition of a "hired automobile" under the terms of the policy in issue.

struction applicable to insurance policies, it is inescapable that the trial court's determination "is supported if not actually required as a matter of law upon the facts." (*Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 33 [17 Cal.Rptr. 12, 366 P.2d 455].)

In determining whether the Maryland policy covers the negligent infliction of injury to Freeman, it must be considered alone and as though it were the only insurance available. (*Mission Ins. Co.* v. *Feldt*, 62 Cal.2d 97, 101 [41 Cal.Rptr. 293, 396 P.2d 709]; *Universal Underwriters Ins. Co.* v. *Aetna Ins. Co.*, 249 Cal.App.2d 144, 148 [57 Cal.Rptr. 240].) So considered, it is clear that the Maryland policy provided coverage.

The trial court, having determined, as noted above, that the McKay truck was a "hired automobile" within the meaning of the Maryland policy properly held that the Maryland policy provided coverage of its named insured Monolith for the latter's negligent act which proximately caused injury to McKay's driver, Freeman.

As directed in *Universal Underwriters Ins. Co.* v. *Aetna Ins. Co., supra,* 249 Cal.App.2d at page 152: "Since both policies covered the accident we next refer to the 'other insurance' clauses of the respective policies to determine whether the loss must be borne by one of the two insurers or apportioned between them."

The "other insurance" provision, contained in respondent American's policy, provides for proration in the event of other insurance.

The "other insurance" provisions, contained in appellant Maryland's policy, provides for proration in the event of other insurance; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile *insured on a cost of hire basis* or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance." (Italics added; Maryland policy, Condition 14; note also Maryland policy, Condition 1, (1) (a).)

As previously noted, the truck was a hired automobile under the definition of the Maryland policy, it was therefore not a non-owned automobile thereunder, and the proviso for excess coverage, on the basis of a "non-owned automobile", is inapplicable. (*Wilshire Ins. Co.* v. *Transit Cas. Co.*, 248 Cal. App.2d 719, 723 [56 Cal.Rptr. 861].) It was stipulated that

"the premium for insurance provided by Maryland Casualty Company covering the accident of May 20, 1964, arising out of the use of or loading of the McKay Trucking Company truck was not computed on a 'cost of hire' basis." Consequently, the proviso for excess coverage, on the basis of a "hired automobile insured on a cost of hire basis," likewise is inapplicable. (*Wilshire Ins. Co.* v. *Transit Cas. Co., supra.*)

The only applicable portion of Maryland's "other insurance" provision, therefore, is the portion providing for proration with other insurance. (*Wilshire Ins. Co.* v. *Transit Cas. Co., supra.*)

Both policies provide for proration as to the May 20, 1964 accident. The trial court correctly decreed that proration was to be had.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.