[Civ. No. 9951. Fourth Dist., Div. One. Dec. 4, 1970.]

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Plaintiff and Respondent, v.
PACIFIC CLAY PRODUCTS CO., et al., Defendants and Appellants.

## COUNSEL

Higgs, Jennings, Fletcher & Mack, Pitts Mack, Holt, Rhoades, Hollywood & Miller, Harrison R. Hollywood and Douglas R. Reynolds for Defendants and Appellants.

Luce, Forward, Hamilton & Scripps, Robert G. Steiner, Henry F. Walker, Brown, Schall & Stennett and Arvin H. Brown, Jr., for Plaintiff and Respondent.

## OPINION

**COUGHLIN, J.**—Defendants appeal from a judgment determining the rights and obligations of insurance carriers respecting liability for loss occasioned by an accident resulting in injuries to a man named Toombs, and the death of a man named Flores, while they were unloading a truck-trailer at a construction site.

Defendants Fidelity and Casualty Company of New York, hereinafter referred to as Fidelity, and Underwriters at Lloyd's London, hereinafter referred to as Lloyd's, were insurers, respectively, under a policy of insurance and a certificate, hereinafter referred to as a policy, issued to Pacific Clay Products Co., hereinafter referred to as Clay Products, insuring against loss on account of liability for damages because of injury or death sustained by any person resulting from, among other things, use of the truck-trailer. Neither policy insured against loss payable under the Workmen's Compensation Act, i.e., Labor Code section 3201 et seq. The policy issued by Lloyd's provided insurance excess to that provided by Fidelity; referred to Fidelity as the primary insurer; and provided liability attached only after the primary insurer paid or was liable to pay the full amount of its ultimate net loss liability, i.e., $50,000.

Plaintiff Indemnity Insurance Company of North America, hereinafter referred to as Indemnity, was insurer under policies of insurance issued, respectively, to Sorrento Valley Development Co., hereinafter referred to as Sorrento, owner of the construction site where the accident occurred, and Einer Bros., Inc., hereinafter referred to as Einer Bros., a general contractor engaged in construction work on the site in question, insuring against loss on account of liability for damages because of injuries sustained by or the death of any person, and resulting from, among other things, the maintenance or use of the construction site.

The evidence in the case was presented by written and oral stipulations which establish the facts. On the day of the accident Toombs and Flores were employed by Clay Products, the former as driver of the truck and the latter as a helper; used the truck, which was owned exclusively by Clay Products, to deliver a load of pipe to the construction site of Sorrento and Einer Bros.; and unloaded the pipe. Toombs had been instructed by Clay Products to relocate previously delivered pipe "to where EINER BROS., INC. wanted it moved"[1]; contacted a foreman employed by Einer Bros., named Valkoff; accompanied Valkoff, in the latter's automobile, to another place on the construction site which he designated as the place where the previ-

---

[1] Quotations respecting the facts are from the written or oral stipulations.

ously delivered pipe should be relocated; and then returned with Valkoff to the place where the previously delivered pipe then was located. "The pipe was delivered to the job site at the instigation only of Einer Bros., Inc." Toombs and Flores loaded the truck with the previously delivered pipe; transported it to the location designated by Valkoff; and proceeded to unload. The truck was equipped with a crane used to unload the pipe. In the process of unloading, the crane contacted an overhead high voltage power line injuring Toombs and electrocuting Flores. Valkoff was not present at the accident site when the accident occurred.

The stipulated facts support inferences Einer Bros. requested Clay products to move the previously delivered pipe to a new location; Einer Bros. knew a truck with a crane would be used to fulfill this request; Valkoff, on behalf of Einer Bros., without warning respecting the presence of the overhead high voltage power line, directed Toombs to relocate the pipe at the place beneath the power line where the accident occurred; and in unloading the pipe at that place Toombs and Flores were acting in response to the directions given them by Valkoff.

Toombs and the heirs of Flores, respectively, brought actions for damages against Sorrento and Einer Bros. premised on their alleged negligence in maintaining the high voltage power line without proper insulation and at a dangerous height, and in directing Toombs and Flores to unload the pipe under the power line without warning them of the presence of the power line with its incident danger; and recovered judgments in substantial amounts which were satisfied by Indemnity.

The Fidelity policy contained a provision extending coverage to "any person while *using* an owned automobile or a hired automobile . . . provided the actual use of the automobile is by the named insured or with his permission" (Italics added); defined an owned automobile as "an automobile owned by the named insured"; and provided "use of an automobile includes the loading and unloading thereof".

Lloyd's policy provided: "This certificate is subject to the same warranties, terms and conditions as are contained in or as may be added to the policy/ies of the Primary Insurers [i.e., Fidelity]. . . ."

Indemnity brought the action at bench to recover from Fidelity and Lloyd's the amounts paid in satisfaction of the judgments in favor of Toombs and the heirs of Flores and in the defense of the actions resulting in those judgments, contending Sorrento and Einer Bros., within the meaning of the extended coverage provisions of the Fidelity and Lloyd's policies, were using the truck during the unloading process when the accident occurred, and this use was related causally to the accident; for this reason

Sorrento and Einer Bros. were insureds under the Fidelity and Lloyd's policies; the insurance thus provided was primary; and the insurance provided by its policy was secondary or excess by virtue of the "other insurance" provision therein, "If the insured has other insurance against a loss covered by this policy . . . the insurance under this policy with respect to a loss arising out of  . . . the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

In defense, Fidelity and Lloyd's contended Sorrento and Einer Bros. were not using the truck within the meaning of their policies.

The court found the accident occurred on premises under the dominion and control of Sorrento and Einer Bros.; the truck and its equipment was owned exclusively by Clay Products; the unloading of the pipe from the truck at the time of the accident was with the actual permission of Clay Products; the unloading of the pipe was a use of the truck under the Fidelity and Lloyd's policies; and, at the time of the accident, Sorrento and Einer Bros. were insureds under and within the meaning of the Fidelity and Lloyd's policies, which implies a finding Sorrento and Einer Bros., at the time of the accident, were using the truck within the meaning of the Fidelity and Lloyd's policies.[2] ■ On appeal Fidelity and Lloyd's contend, in substance, the evidence does not support the finding Sorrento and Einer Bros. were using the truck.

Each of the parties cites and digests, analyzes and categorizes to its satisfaction, distinguishes or applies, and relies upon or rejects as authority what one court has described as that "plethora of cases . . . in which insurance carriers engaged in an internecine struggle" to determine which shall bear the loss under an extended coverage clause, which have not been productive of "any thread of principle" (*American Auto. Ins. Co.* v. *Transport Indem. Co.,* 200 Cal.App.2d 543, 544 [19 Cal.Rptr. 558]), and which, as stated by another court, "decide whether the unusual facts fit the generalized formulae of extended coverage which, relative to those facts, are now metamorphosed into ambiguity." (*Pacific Indem. Co.* v. *Truck Ins. Exch.,* 270 Cal.App.2d 700, 703 [76 Cal.Rptr. 281].)

Many of the cases cited deal with issues not present in the case at bench,

---

[2]Defendants contend the court did not find Sorrento and Einer Bros. were using the truck. Our conclusion to the contrary is premised upon an application of the rule findings of fact must be liberally construed to support the judgment. (*Johndrow* v. *Thomas,* 31 Cal.2d 202, 207 [187 P.2d 681]); a general finding includes a specific finding on all facts necessarily implied therein (*Consolidated Steel Corp.* v. *Industrial Acc. Com.,* 6 Cal.2d 368, 369 [57 P.2d 919]); and a judgment will not be set aside for lack of an express finding on an issue where a finding thereon consistent with the judgment results by necessary implication from the express findings made. (*Richter* v. *Walker,* 36 Cal.2d 634, 639-640 [226 P.2d 593].)

such as whether the accident occurred during the loading and unloading constituting a use of the truck, and whether there is a causal relationship between the use of the truck and the accident resulting in injury.

From the stipulations of fact and reasonably deducible inferences, the trial court was entitled to conclude Einer Bros. had control over the construction site; requested Clay Products to move the previously delivered pipe to another location knowing compliance with this request would require the use of one of its trucks equipped with a crane; in the exercise of its control over the premises, exerted control over the place where the previously delivered pipe should be relocated; in further exercise of this control, specifically directed the employees of Clay Products to unload the pipe at a place where the contemplated unloading process would be dangerous because of the overhead high voltage power line; and in this manner participated in the unloading of the truck. These circumstances support the implied finding Einer Bros., at the time of the accident, was using the truck within the meaning of the Fidelity and Lloyd's policies. (*P. E. O'Hair & Co. v. Allstate Ins. Co.*, 267 Cal.App.2d 195, 198 [72 Cal.Rptr. 690]; *California Steel Buildings, Inc. v. Transport Indemnity Co.*, 242 Cal.App.2d 749, 755-756 [51 Cal.Rptr. 797]; *American Auto Ins. Co. v. Transport Indem. Co., supra,* 200 Cal.App.2d 543, 555; *Hake v. Eagle Picher Company,* 406 F.2d 893, 895; *Liberty Mutual Ins. Co. v. Steenberg Construction Co.,* 225 F.2d 294, 295.)

In situations such as the case at bench whether an alleged additional insured is using a vehicle owned by the named insured is related to the control exerted by the former over the unloading process. (Gen. see *Hake v. Eagle Picher Company, supra,* 406 F.2d 893, 895-896.) We refrain from stating a general rule in the premises; instead, base our decision upon the conclusion the case at bench, as to Einer Bros., is within the ambit of control found sufficient in the afore-cited cases to warrant a finding the alleged additional insured's participation in the unloading constituted "using" the insured vehicle; and anticipate hopefully future controversies respecting the effect of an extended coverage clause may be limited by virtue of recent statutory enactments in the premises. (See Ins. Code, § 11580.1 [added by Stats. 1970, ch. 300, § 4].)

Defendants contend two recent decisions, i.e., *International Business Machines Corp. v. Truck Ins. Exch.,* 2 Cal.3d 1026 [89 Cal.Rptr. 615, 474 P.2d 431], and *Camay Drilling Co. v. Travelers Indem. Co.,* 12 Cal. App.3d 237 [90 Cal.Rptr. 710], dictate the conclusion neither Einer Bros. nor Sorrento were using the truck at the time of the accident. As respects Einer Bros., reliance upon these decisions is misplaced. Neither case involved an actual participation by the alleged additional insured in the loading or

unloading operation of the insured vehicle accompanied by an actual exercise of control over the insured vehicle causally related to the accident.

As respects Sorrento, the evidence establishes although it had control over the construction site it did not exercise that control to require relocation of the previously delivered pipe; did not direct the pipe to be unloaded at a specific place, i.e., at a dangerous site; and, thus, did not participate in the unloading. Under these circumstances, the finding Sorrento, at the time of the accident, was using the truck is not supported by the evidence.

The defendants contend Lloyd's excess policy is limited to insuring Clay Products, named therein as the "assured"; has no extended insurance provision, and, for this reason, does not extend coverage to Einer Bros., citing *Oil Base, Inc.* v. *Transport Indem. Co.,* 143 Cal.App.2d 453, 462 [299 P.2d 952], in support of this contention. However, contrary to the excess policy in the cited case, the Lloyd's policy provides it is "subject to the same warranties, terms and conditions" as are contained in the policy of the primary insurer; the latter, i.e., the Fidelity policy, contains an extended insurance provision; and, for this reason, contrary to defendants' contention, Lloyd's policy covers Einer Bros. (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 439-440 [296 P.2d 801]; *Oil Base, Inc.* v. *Transport Indem. Co., supra,* 143 Cal.App.2d 453, 462.)

Defendants contend the provisions in the Fidelity and Lloyd's policies excluding from coverage loss on account of liability for injuries sustained by or the death of an employee of the insured during the course of employment forecloses recovery under those policies for the loss on account of the injuries sustained by Toombs and the death of Flores in the course of their employment by Clay Products, the named insured in those policies. It is well established "an exclusion clause of this type applies only when the injured party was employed by the *particular* insured, named *or* additional, who seeks the protection of the policy." (*Campidonica* v. *Transport Indemnity Co.,* 217 Cal.App.2d 403, 407 [31 Cal.Rptr. 735]; in accord: *U. S. Fire Ins. Co.* v. *Transport Indem. Co.,* 244 Cal.App.2d 110, 116 [52 Cal. Rptr. 757]; *United States Steel Corp.* v. *Transport Indem. Co.,* 241 Cal. App.2d 461, 473 [50 Cal.Rptr. 576]; *Pleasant Valley Assn.* v. *Cal-Farm Ins. Co.,* 142 Cal.App.2d 126, 133 [298 P.2d 109].)

Defendants also assert several contentions respecting the division of responsibility for the loss covered by the policies under consideration. To determine the issues thus raised, we apply pertinent decisional law noting, again hopefully, future controversies in this field may be limited by recently adopted statutory rules, i.e., Insurance Code sections 11580.5 and 11580.9. (Stats. 1970, ch. 300, §§ 5, 7.)

■ Defendants Clay Products and Fidelity, alone, contend the Indemnity policy by its terms is excess only to a loss arising out of a "hired automobile insured on a cost of hire basis or the use of any non-owned automobile"; the truck is not within either of these categories; for this reason the excess clause does not apply; and, as a consequence, the loss should be prorated. This contention is premised on the fact the truck was not a hired automobile insured on a cost of hire basis; upon the claim under the facts in the case, the truck was a hired automobile within the meaning of the policy; and on the rule, stated in *Monolith Portland Cement Co.* v. *American Home Assur. Co.*, 273 Cal.App.2d 115, 123 [78 Cal.Rptr. 113], a hired automobile is not a non-owned automobile within the meaning of the policy.

Decisive of the issue is whether the truck was hired by Einer Bros. within the meaning of the Indemnity policy which declares a "hired automobile" is "an automobile used under contract in behalf of, or loaned to, the named insured," i.e., Einer Bros.

Indemnity contends the truck was not used under contract in behalf of its insured, Einer Bros., because the word "contract" as defined by and used in its policy "means any *written* contract or agreement, . . ." (Italics ours), and the truck was not used under a written contract or agreement. The court found accordingly.

Fidelity responds, the definition of the word "contract" as a "written contract or agreement" is ambiguous; the adjective "written" modifies only the word "contract" and does not modify the word "agreement"; the definition of the word "contract," thus construed, includes an oral agreement; and there is evidence supporting the conclusion the truck was being used in behalf of Einer Bros. under an oral agreement.

■ It should be noted, in the clause defining the word "contract" as "any written contract or agreement, . . ." there is no comma following the word "contract," but there is a comma following the word "agreement." The language and punctuation used indicates the adjective "written" modifies the phrase "contract or agreement." (*St. Louis-San Francisco Ry. Co.* v. *Bengal Lumber Co.*, 145 Okla. 124 [292 P. 52, 53].)

■ A contract should receive such interpretation as will make it reasonable and avoid absurdities. (Civ. Code, §§ 1638, 1643; *Golden* v. *Fischer*, 27 Cal.App. 271, 279 [149 P. 797].) ■ Were Fidelity's interpretation accepted, the clause "written contract or agreement" would mean any written contract, or written or oral agreement, expressed or implied. This is unreasonable and absurd. We reject Fidelity's contention in the premises.

However, Fidelity claims even though the truck was not used under a written contract, it was "loaned to" Einer Bros. and for this reason constituted a hired automobile within the meaning of the Indemnity policy, citing *Monolith Portland Cement Co.* v. *American Home Assur. Co., supra,* 273 Cal.App.2d 115, 121-122 [78 Cal.Rptr. 113]. In the cited case the trial court found the subject truck was "under the dominion and control of" the insured and was a "hired automobile" within the meaning of the policy there under consideration, which implied a finding the truck was loaned to the insured. In the case at bench the court found the truck was not loaned to Einer Bros. �In A loan of property creates the relationship of lender and borrower; involves a grant by the lender of the custody and use of the property loaned to the borrower on condition the property be returned (see *Monolith Portland Cement Co.* v. *American Home Assur. Co., supra,* 273 Cal.App.2d 115, 122); and does not arise from an exercise of control pursuant to a right of control. ▤ In the case at bench the evidence establishes, directly or by inference, the truck, at all times, was in the exclusive possession and custody of Toombs and Flores; they were acting as employees of Clay Products and not of Einer Bros.; the truck was not in the custody of Einer Bros. at any time; and the control exercised by Einer Bros. over the loading operation which supports the finding it was using the truck at the time of the accident, did not involve control over the truck as such, its possession or custody. This evidence supports a finding the truck was not loaned to Einer Bros.

▪ All defendants contend the Lloyd's excess policy does not attach to the loss in question until both the Fidelity and Indemnity policies have been exhausted. This contention is premised upon the claim certain provisions in the Lloyd's excess policy make the insurance provided thereby excess not only to the insurance provided by Fidelity, the primary insurer, but also to the insurance provided by Indemnity; fails to consider the decision in *Fireman's Fund Indemnity Co.* v. *Prudential Assurance Co.,* 192 Cal.App.2d 492, 494-497 [13 Cal.Rptr. 629], with which we agree, holding similar provisions in a similar excess policy would not have the effect of making it excess over other insurance not subject to the excess insurance provision in the primary insurer's policy; and must be rejected under the rule in that case and the facts in the case at bench. (See also *Home Indemnity Co.* v. *Mission Ins. Co.,* 251 Cal.App.2d 942, 962-963 [60 Cal.Rptr. 544].) The insurance provided by the Indemnity policy was not subject to the excess insurance provision in the Fidelity policy, i.e., the primary insurer's policy, because it did not apply to a loss occasioned by an "owned" automobile; and the truck was an "owned" automobile under that provision.

All defendants also contend in the event the insurance provided by the

Lloyd's policy attaches to the loss in excess of the Fidelity policy limits, the loss should be prorated between Lloyd's and Indemnity. This contention is premised on the erroneous concept the provision of the Lloyd's policy declaring the insurance provided thereby is excess not only to the insurance provided by Fidelity but also to all other insurance; and invokes the rule, where the insurance under two policies is excess as to a particular loss it shall be prorated between them, citing *Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 35 [17 Cal.Rptr. 12, 366 P.2d 455], *Oil Base, Inc.* v. *Transport Indem. Co., supra,* 143 Cal.App.2d 453, 467, *Employers etc. Corp.* v. *Pac. etc. Ins. Co.,* 102 Cal.App.2d 188, 191 [227 P.2d 53], and similar cases. The cited cases state the rule but do not apply to the situation at bench. The Fidelity primary insurance policy and the Lloyd's excess policy, respectively, are similar to the primary and excess policies considered in *Fireman's Fund Indemnity Co.* v. *Prudential Assurance Co., supra,* 192 Cal.App.2d 492, and *Home Indemnity Co.* v. *Mission Ins. Co., supra,* 251 Cal.App.2d 942, where the court denied proration between the insurer under the excess policy and an insurer under a third policy containing an excess insurance clause similar to that contained in the Indemnity policy. For the purpose at hand the insurance provided by the Fidelity and Lloyd's policies provide primary coverage to Clay Products equaling the combined limits of the two policies; an excess insurance clause in the Fidelity policy, which is incorporated in the Lloyd's policy, does not apply to a loss arising out of the use of the truck owned by the named insured in those policies, i.e., Clay Products; and the insurance provided by the Indemnity policy, as to the loss in question, by virtue of the excess insurance clause in that policy, is excess or secondary to the combined primary insurance provided by the Fidelity and Lloyd's policies. (*Home Indemnity Co.* v. *Mission Ins. Co., supra,* 251 Cal.App.2d 942, 962, 963; *Fireman's Fund Indemnity Co.* v. *Prudential Assurance Co., supra,* 192 Cal.App.2d 492, 494-497.)

By way of summary, we conclude Einer Bros. is an additional insured under the Fidelity and Lloyd's policies as to the loss sustained by Einer Bros. on account of the Toombs and Flores judgments and defense of the actions in which they were entered; the insurance by Indemnity to Einer Bros. covering that loss is excess; Indemnity is entitled to recover from Fidelity and Lloyd's the amounts paid by it on account of the Einer Bros. loss; Sorrento is not an additional insured under the Fidelity or Lloyd's policies as to the loss sustained by Sorrento on account of the judgments or defense of the actions in question; and Indemnity is not entitled to recover any of the amounts paid by it on account of Sorrento's loss.

The judgment is reversed with instructions to amend the findings of fact in harmony with the views expressed in this opinion; to take such further

proceedings as may be appropriate to determine the respective obligations of the parties; and to enter judgment accordingly.

Brown, P. J., and Ault, J., concurred.