[Civ. No. 19965. First Dist., Div. Two. June 20, 1963.]

ED CAMPIDONICA et al., Plaintiffs and Appellants, v.
TRANSPORT INDEMNITY COMPANY, Defendant and
Respondent.

Gazzera & Antonioli, Ropers, Majeski & Phelps and Cyril Viadro for Plaintiffs and Appellants.

Toff & Gordon and Melville A. Toff for Defendant and Respondent.

SHOEMAKER, J.—Plaintiffs Ed Campidonica and Permanente Cement Company appeal from a judgment of dismissal entered upon the sustaining of a demurrer to their complaint without leave to amend.

The essential allegations of the complaint are as follows: On December 29, 1955, Bridge, a truck driver employed by Miles & Sons Trucking Service, took his employer's truck, which was insured by defendant Transport Indemnity Company, to Permanente Cement Company to have it loaded with cement. During the course of the loading, which was done by Campidonica, an employee of Permanente, Bridge was injured, and he thereafter brought suit against Campidonica and Permanente. Bridge's complaint contained no reference to either the loading operation or the presence of a truck, but alleged only that defendants had negligently "caused a heavy metal object to fall" on his head. Permanente and Campidonica, knowing that the accident had in fact occurred while they were loading a Miles & Sons truck with the consent and permission of the owner, tendered the defense of the Bridge action to Transport Indemnity Company on the theory that the indemnity policy which it had issued to Miles & Sons ran in favor of any person using an insured vehicle with the consent of the owner. Transport Indemnity Company, despite its actual knowledge that Bridge's injury arose out of the use of a Miles & Sons truck, refused to undertake the defense of the action or to assume liability for any judgment which Bridge might obtain against Permanente and Campidonica. Campidonica thereafter negotiated a settlement with Bridge, gave notice to Transport Indemnity Company, and upon its refusal to pay the same, paid Bridge $6,500 for a full release of his claim.

Plaintiffs sought a judicial declaration that defendant Transport Indemnity Company was obligated to defend the Bridge action and, since it had refused to undertake such defense, was now obligated to reimburse plaintiffs for their costs of suit, attorney's fees, and the $6,500 which Campidonica had been compelled to pay Bridge in full settlement of his claim. Copies of the Bridge complaint and of the indemnity policy issued to Miles & Sons were appended to the complaint.

Defendant demurred to the complaint both generally and specially. The successful general demurrer was based on the grounds that (1) the policy issued to Miles & Sons afforded no coverage to plaintiffs as additional insureds or otherwise, and (2) defendant's duty to defend the Bridge action on plaintiffs' behalf was controlled by the allegations of Bridge's complaint which made no reference to a Miles & Sons

truck, or indeed, to any vehicle being involved in the accident.

Turning first to an examination of the policy itself, it is apparent that the judgment may not be upheld on the ground that no liability coverage was extended to permissive users of vehicles owned by Miles & Sons. Pursuant to the coverage clause of the policy, respondent insurer agreed "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay for damages arising out of the occupation of the named insured, as a result of bodily injury. . . ." The policy is expressly made applicable to "occurrences, except those caused intentionally by or at the direction of the insured, . . . with respect to owned automobiles. . . ." An "owned automobile" is defined as "a land motor vehicle, trailer or semi-trailer and its equipment and other equipment permanently attached thereto" which shall be "registered to or newly acquired by the named insured." The insurer promises that where insurance is "afforded by the other terms of this policy," it will "conduct whatever investigation is necessary, negotiate settlements and defend or settle suits filed against the insured"; and "pay all costs for investigation and litigation of claims or suits filed against the insured. . . ." The policy further provides that "Such insurance as is afforded by this policy shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the existence, ownership, maintenance or use of any automobile during the policy period, to the extent of the coverage and limits of liability required by such law.

In the light of the provisions above set forth, the policy does extend coverage to permissive users of trucks owned by Miles & Sons, the named insured. Vehicle Code, section 16451, subdivision (b), a part of the Financial Responsibility Law, requires that "An owner's policy of liability insurance shall: . . . [i]nsure the person named therein and any other person, as insured, using any described motor vehicle with the express or implied permission of said assured, against loss from the liability imposed by law for damages arising out of ownership, maintenance, or use of such motor vehicle. . . ." This statute must be considered a part of every policy of liability insurance even though the policy itself does not specifically so provide. (*Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 39-40 [307 P.2d 359]; *Bonfils* v. *Pacific Auto. Ins. Co.* (1958) 165 Cal.App.2d 152, 156-158 [331

P.2d 766].)[1] We are satisfied that appellants, being permissive users of a Miles & Sons truck at the time of the accident, were additional insureds under the policy.

■ Respondent contends, however, that the "exclusions" portion of the policy specifically provides that the policy is not applicable "to any liability arising out of any bodily injury . . . of any employee of the insured if such occurrence is incurred in the course of employment." Since Bridge was an employee of Miles & Sons, the named insured, and was acting within the scope of his employment at the time of the accident, respondent asserts that it was not obligated to defend or to indemnify appellants against any action arising out of his injuries. This precise contention was rejected in *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co.* (1956) 142 Cal. App.2d 126, 131-134 [298 P.2d 109], where the court held that an exclusion clause of this type applies only when the injured party was employed by the *particular* insured, named *or* additional, who seeks the protection of the policy. In the present case, Bridge was clearly not an employee of appellants, who were additional insureds under the policy.

It remains to be determined whether respondent is correct in contending that it was under no duty to defend the Bridge action on appellants' behalf because the allegations of Bridge's complaint were devoid of any reference to a Miles & Sons truck being involved in the accident. ■ In this connection, appellants' complaint alleged that respondent had knowledge that the accident did in fact occur during the loading of a Miles & Sons truck; these allegations must be taken as true for the purpose of ruling upon a general demurrer, hence the question squarely presented is whether an insurer, despite actual knowledge that an action may result in liability within the coverage of its policy, may refuse to defend such an action for the sole reason that the complaint filed therein does not reveal on its face that such coverage exists.

The California courts have laid down certain general rules to be followed in determining whether or not, in a given instance, an insurer is bound to defend an action brought against its insured. ■ In general, the insurer's obligation to defend is measured by the terms of the insurance policy and the pleading of the claimant who sues the insured. (*Lamb* v. *Belt Casualty Co.* (1935) 3 Cal.App.2d 624, 630

[1] Both of these cases construe former section 415, subdivision (b), of the Vehicle Code, which is now Vehicle Code, section 16451.

[40 P.2d 311]; *Greer-Robbins Co.* v. *Pacific Surety Co.* (1918) 37 Cal.App. 540, 543-544 [174 P. 110].) ▮ Thus, if the complaint filed against the insured alleges facts within the coverage of the policy, it is the duty of the insurer to undertake the defense even though its own investigation has revealed that the claim sued upon is not in fact covered. (*Remmer* v. *Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84, 90 [295 P.2d 19, 57 A.L.R.2d 1379]; *Lamb* v. *Belt Casualty Co., supra.*) In the converse situation, where the complaint shows on its face that the claim sued upon is *excluded* from coverage under the policy, it has been stated that the insurer is under no obligation to defend. (*Remmer* v. *Glens Falls Indem. Co., supra,* at p. 90.)

▮ In the instant case, the Bridge complaint does not on its face reveal that the claim sued upon is either within or without the coverage of the policy. Had the Bridge action gone to trial, it is entirely possible that the evidence presented would have revealed that Bridge was struck on the head while appellants were loading a Miles & Sons truck. It is equally conceivable, from the face of the complaint, that the accident occurred during operations totally unrelated to the use of the truck. Under such circumstances, the situation is one of potential coverage, and doubt should be resolved in the insured's favor. (*Ritchie* v. *Anchor Casualty Co.* (1955) 135 Cal.App.2d 245, 251 [286 P.2d 1000].) Particularly is this true in view of the fact that respondent insurer had actual knowledge that Bridge's injury arose out of the use of a Miles & Sons truck.

In *Firco, Inc.* v. *Fireman's Fund Ins. Co.* (1959) 173 Cal. App.2d 524 [343 P.2d 311], the result reached by the court was a far more harsh one for the insurer. In that case, the complaint filed against the assured alleged that they had "maliciously" and "wantonly" cut down and removed a large number of trees. Since the public liability policy excluded from coverage damage intentionally caused by the assured, the insurer refused to undertake the defense of the action, and the assured brought an action for declaratory relief against the insurer. The trial court found for defendant insurer, holding that it was under no duty to defend the action on behalf of its assured. On appeal, the judgment was reversed, with the court holding that the allegations of the complaint against the assured did not justify the conclusion that the insurer was not bound to defend, because it might turn out in the course of the trial that the claimant, despite the

allegations of its complaint, was entitled to recover damages for the *unintentional* removal of its trees. The court stated: "We have presented to us, therefore, an action based upon a claim that may or may not be covered by the policy. In such a situation the insurer is obligated to undertake the defense of the action and to continue such defense at least until it appears that the claim is not covered by the policy. If and when that becomes certain the insurer may turn back the defense." (P. 528.) In the present case, the equities are much more strongly in favor of the insured, for the allegations of the Bridge complaint did not bring the claim within any exception of the policy and respondent insurer had actual knowledge that the claim was within the potential coverage of its policy.

In our opinion, the respondent was under a duty to defend the action at least until such time as it became apparent that Bridge's injury did not arise out of appellants' use of a Miles & Sons truck; not having done so, appellants were entitled to make a reasonable and bone fide compromise of the action against them, and they may now seek reimbursement of this sum and of their costs and attorney's fees from respondent insurer. *(Walters* v. *American Ins. Co.* (1960) 185 Cal.App. 2d 776, 786 [8 Cal.Rptr. 665] ; *Ritchie* v. *Anchor Casualty Co., supra,* at p. 258.)

For the reasons above stated, the trial court erred in sustaining the demurrer to the complaint without leave to amend.

Judgment reversed.

Kaufman, P. J., and Agee, J., concurred.

A petition for a rehearing was denied July 9, 1963, and respondent's petition for a hearing by the Supreme Court was denied August 14, 1963.