[Civ. No. 24921. First Dist., Div. One. Aug. 1, 1969.]

CALIFORNIA PACKING CORPORATION, Plaintiff and Appellant, v. TRANSPORT INDEMNITY COMPANY, Defendant and Respondent.

---

*Assigned by the Chairman of the Judicial Council.

Bronson, Bronson & McKinnon and Paul H. Cyril for Plaintiff and Appellant.

Toff, Gordon & Royce, Melville A. Toff and Marvin A. Jacobs for Defendant and Respondent.

ELKINGTON, J.—Plaintiff California Packing Corporation (Cal-Pack) appeals from a judgment entered in a declaratory relief action brought against defendant Transport Indemnity Company (Transport) for the purpose of determining the respective liabilities of Cal-Pack's insurance carrier Fireman's Fund Insurance Company (the Fund) and Transport, for personal injuries sustained by one David E. Thomas.

Thomas, an employee of Miles Motor Transport System (Miles), drove his employer's truck onto premises of Cal-Pack to pick up a load of empty boxes. He was injured when a forklift, operated by Cal-Pack's employee Moses Melton, became entangled in the truck's tie-down cable. At the time Melton (as was determined by a jury in the instant action) was engaged in loading the Miles truck. Thomas commenced an action for personal injuries, naming both Cal-Pack and Melton as defendants. These parties tendered defense of the action to Transport whose insurance policy covered the Miles truck. The tender was rejected by Transport. Subsequently, the case was settled by the Fund, as Cal-Pack's insurer, for $13,875. The fund incurred an obligation of $700 in attorney fees in defending the Thomas action.

Under its policy, the Fund's liability limit was $100,000 for each person injured. Transport's limit, as indicated by a policy in evidence at the trial, appeared to be $10,000 for each

person injured. The trial court concluded that the two insurance carriers were liable for the Thomas settlement in proportion to their respective coverage limits. The Fund's liability was computed at $100,000/110,000 of the whole, or $13,250, and Transport's share at $10,000/110,000, or $1,325. It was accordingly adjudged that Transport pay to the Fund's insured, Cal-Pack, $1,325.

Cal-Pack contends, as a matter of law, that the trial court's allocation of liability was erroneous. It points out that Miles and its insurance carrier have a "primary" liability for Thomas' injuries since Melton, the tortfeasor, was directly insured as a permissive user of the Miles truck. Cal-Pack then argues that its own liability is "secondary" since it arises solely by virtue of the doctrine of *respondeat superior*.

Relying on *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914], *United States Fire Ins. Co.* v. *Transport Indem. Co.*, 244 Cal.App.2d 110 [52 Cal.Rptr. 757], and *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co.*, 142 Cal.App.2d 126 [298 P.2d 109], Cal-Pack contends that Transport must contribute toward the Thomas settlement the full amount of its policy limit, which the parties in their briefs agreed was $10,000. These cases hold that where an employer's tort liability exists solely by virtue of the unauthorized negligence of an employee, automobile liability insurance directly covering the employee must first be exhausted before resorting to insurance covering only the secondarily liable employer.

This contention of Cal-Pack is unacceptable for the reason that its liability for Thomas' damages is also *primary*. This liability arises from the admitted fact that Melton's permissive use of the Cal-Pack owned forklift, during the loading operation, proximately contributed to Thomas' injuries.

■ The Fund's policy insures against liability arising out of the use of any "*automobile.*" It then proceeds to define that term rather enigmatically.[1] Our best effort to

---

[1]The entire policy definition follows:

"(b) Automobile. Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer as follows:

"(1) Owned Automobile—an automobile owned by the named insured;

"(2) Hired Automobile—an automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile;

understand this definition and apply it to the facts and circumstances of the instant case leads us to this meaning: An insured automobile is an owned automobile or land motor vehicle, unless it is equipment designed for use principally off public roads and is not subject to motor vehicle registration.[2]

The parties concede that a forklift is a "land motor vehicle." Such a vehicle is obviously designed "for use principally off public roads." But if it is subject to motor vehicle registration it is nevertheless an insured automobile under the Fund policy.

Vehicle Code section 4000 generally provides that all motor vehicles used upon highways shall be registered. An exception is provided by Vehicle Code section 4013 which states: "Any forklift truck which is designed primarily for loading and unloading and for stacking materials and is operated upon a highway only for the purpose of transporting products or material across a highway in the loading, unloading or stacking process, and is in no event operated along a highway for a greater distance than one-quarter mile is exempt from registration." ▮ It is apparent that whether a forklift which is a motor vehicle is subject to registration, can be determined

---

"(3) Non-Owned Automobile—any other automobile.

"The following described equipment shall be deemed an automobile while towed by or carried on an automobile not so described, but not otherwise: if of the crawler-type, any tractor, power crane or shovel, ditch or trench digger; any farm-type tractor; any concrete mixer other than of the mix-in-transit type; any grader, scraper, roller or farm implement; and if not subject to motor vehicle registration, any other equipment not specified below, [*] which is designed for use principally off public roads.

"The following described equipment shall be deemed an automobile while towed by or carried on an automobile as above defined solely for purposes of transportation or while being operated solely for locomotion, but not otherwise; if of the non-crawler type, any power crane or shovel, ditch or trench digger; and any air-compressing, building or vacuum cleaning, spraying or welding equipment or well drilling machinery."

*Note: The equipment "specified below" is:

"(c) Semitrailer. The word 'trailer' includes semitrailer.

"(d) Private Passenger Automobile. The term 'private passenger automobile' means a private passenger, station wagon or jeep type automobile, and also includes any automobile the purposes of use of which are stated in the declarations as 'pleasure and business.'

"(e) Two or More Automobiles. The terms of this policy apply separately to each automobile insured hereunder, but a motor vehicle and a trailer or trailers attached thereto shall be held to be one automobile as respects limits of liability."

[2]If we have been unsuccessful in unravelling the intended meaning and application of the policy definition, it may at least be said to be of uncertain denotation. In that event the uncertainty must be resolved against the Fund and Cal-Pack (see authorities, *post*, p. 368).

only by reference to the use to which the individual machine is put.

It follows that forklifts generally *are* subject to registration when operated on a highway, other than for crossing, and in any event when used along a highway for more than a quarter mile. On the other hand they *are not* subject to registration when operated within the limits set by section 4013.

■ The Fund policy exempts from coverage certain motor vehicles "not subject to motor vehicle registration." It is not clear whether the reference is only to classes of motor vehicles which are per se exempt from registration (e.g., special construction equipment; see Veh. Code, § 4010), or if it includes individual vehicles ordinarily subject to such registration, but exempt therefrom because of the limited nature of their use (e.g., forklifts; see Veh. Code, § 4013).

■ "If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, . . . the [policy's] language will be understood in its most inclusive sense, for the benefit of the insured." (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914]; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co.*, 142 Cal.App.2d 126, 132 [298 P.2d 109].) This rule is particularly applicable where, as here, the insurance carrier claims a certain risk is excluded, or property excepted, from coverage. (*California Comp. & Fire Co.* v. *Industrial Acc. Com.*, 62 Cal.2d 532, 534 [42 Cal.Rptr. 845, 399 P.2d 381].) And just what is excluded from the coverage of an insurance policy must be *conspicuous, plain and clear.* (*Gray* v. *Zurich Ins. Co.*, 65 Cal.2d 263, 273 [54 Cal.Rptr. 104, 419 P.2d 168].)

■ Applying the foregoing well-known rules of construction, we interpret the Fund policy as covering the subject forklift and providing "primary" coverage to Melton, its permissive user at the time of Thomas' injury.

It follows that the superior court's conclusion that Transport and the Fund should contribute toward the Thomas settlement in proportion to their coverage limits was correct. However, for reasons we shall now discuss, the judgment of the lower court must nevertheless be modified.

As previously indicated, the action below was tried on the theory that Transport's liability limit was $10,000 for each person injured.

Pending this appeal, and after filing of briefs, Cal-Pack moved, under the authority of Code of Civil Procedure section

956a (now § 909), for leave to present additional evidence. The subject evidence was alleged to be an undisclosed endorsement to the Transport policy in effect at the time of the Thomas accident.

Supporting the motion was a declaration of counsel which related the following. In a reciprocal exchange of policies before the trial, Cal-Pack was furnished with a copy of the Miles policy written by Transport. A question arose whether it was the effective policy, which resulted in Cal-Pack setting for hearing a "Motion to Produce." Thereafter counsel for Transport sent to counsel for Cal-Pack a letter as follows:

"Enclosed herein please find a copy of a letter received from Transport Indemnity Company verifying the fact that the policy that you have in your possession is the same as the policy effective at the time of the subject accident.

"I trust this will eliminate the necessity of appearing at the Motion to Produce on June 7, 1965.

"If not, please advise."

Enclosed with the letter was a copy of a letter from Transport to its attorney reading:

"Please be advised that the policy of insurance that I forwarded to your office on December 3, 1964, pertaining to the coverage afforded to Miles and Sons Trucking Service was obtained from our Home Office in Los Angeles. This policy, issued July 1, 1964, to run until cancelled, is identical in its pertinent provisions to the policy of insurance issued to Miles and Sons Trucking Service effective at the time of the subject accident.

"We have checked the foregoing through our Home Office and are advised by them that the above is true.

"I trust that this letter answers your inquiry."

The declaration continued, stating, among other things: "The case proceeded through trial, and at no time was any further material with reference to the Transport policy supplied me by its attorneys. The action was tried on the basis of the policy as presented to me by Transport in June, 1965. During the course of this appeal, in June, 1968, it was discovered that a Public Utilities Commission endorsement was on file which applied to the Transport policy which is the subject of this action, and which was in effect at the time of the accident. . . . At no time prior to June, 1968, were plaintiffs and appellants aware of the existence of the Public Utilities Commission endorsement."

This court granted the motion of Cal-Pack. As a result, not one, but two endorsements which were part of the effective Transport policy were disclosed. The effect of the first endorsement was to raise to $25,000 the limit for bodily injuries of one person. Transport now offers to stipulate that this endorsement with the described limit is applicable.

The second endorsement is entitled Public Utilities Commission LC 725. It was written after the other endorsement and raised the coverage limit for bodily injury of one person to $100,000. Transport concedes that this endorsement also was in effect at the time of the Thomas accident, but insists that it did not cover the Miles truck there involved.

Although the problem is not without difficulty, we conclude that Transport's endorsement LC 725, with its $100,000 limit, did cover Melton as the permissive user of the Miles truck.

Miles was a "Highway Common Carrier"; it was also a "Highway Common Carrier for Petroleum Products in Bulk," and a "Petroleum Irregular Route Carrier." It was certificated by the Public Utilities Commission in each of these three classifications.

Transport's specific contention is that endorsement LC 725 covers only petroleum-carrying vehicles; and that since the Miles truck being loaded by Melton was only a conventional truck being used under the authority of Miles' certification as a "Highway Common Carrier," the endorsement afforded no coverage.

Transport's basic policy covered *all* owned vehicles of Miles, whether or not engaged in carrying petroleum. Endorsement LC 725 was "attached to and made a part" of that policy. A general statement of the preamble or heading of the endorsement recites that it is applicable to "petroleum irregular route carriers, petroleum contract carriers, and highway common carriers of petroleum and petroleum products in bulk in tank trucks and/or tank trailers." However, a specific provision found in the body of the endorsement indicates that its applicability is not so limited.

Where general and specific provisions of an insurance policy differ as to its coverage or applicability, the specific provisions will prevail. (*Continental Cas. Co.* v. *Zurich Ins. Co.,* 57 Cal.2d 27, 35 [17 Cal.Rptr. 12, 366 P.2d 455].)

Operation of the subject truck by Miles as a "Highway Common Carrier" required a Public Utilities Commission

"certificate of public convenience and necessity." In the text of endorsement LC 725, we find the covenant, as pertinent here: "In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby agrees to pay, . . . any final judgment . . . resulting from the . . . use of *motor vehicles for which a certificate of public convenience and necessity or permit is required or has been issued to the insured by the Public Utilities Commission of the State of California,* . . ." (Italics added.) The endorsement further recites: "[A]ll terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the insured and the Company" and that "Nothing in this endorsement shall be construed to limit or restrict any coverage otherwise provided by the policy of which this endorsement is made a part."

■ With the policy the foregoing language must reasonably be construed to extend $100,000 coverage for bodily injuries to one person resulting from the use of *any owned motor vehicle* of Miles, at least where, as here, the operation of such motor vehicle requires a certificate of "public convenience and necessity." It follows, each insurance carrier having an applicable coverage limit of $100,000, that Cal-Pack is entitled to recover from Transport one-half of the cost of the Thomas settlement.

Transport has pointed to a Public Utilities Commission order in support of its argument that endorsement LC 725 was intended to apply only to petroleum-carrying vehicles. However, even if that order be so construed it cannot reasonably prevail over the clear language of the endorsement that it applies to all "motor vehicles for which a certificate of public convenience and necessity" is required or issued. The truck here involved was such a vehicle; and Transport received a premium for insuring that vehicle under the $100,000 limit of the endorsement.

The judgment will be modified to direct that defendant Transport Indemnity Company pay to plaintiff California Packing Corporation the sum of $7,287.50 with interest thereon from the date of the Thomas settlement; as so modified the judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied on August 26, 1969, and the following opinion was then rendered:

THE COURT.— In its petition for rehearing Transport urges that the opinion of the court does not resolve the questions arising out of the "other insurance" clauses of the respective policies. At the unreported oral argument on this appeal Transport and Cal-Pack conceded that if the forklift was an owned motor vehicle covered by the Fund policy, the "other insurance" clauses presented no issue on this appeal. In any event, Transport's endorsement LC 725 provides: "Within the limits of liability hereinafter provided it is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability hereunder. . . ." This clause supersedes and renders ineffective Transport's "other insurance" claims on which it now relies.

Respondent's petition for a hearing by the Supreme Court was denied September 24, 1969.