[Civ. No. 2232. Fifth Dist. Jan. 22, 1976.]

CAL-FARM INSURANCE COMPANY et al.,
Plaintiffs, Cross-defendants and Appellants, v.
FIREMAN'S FUND INSURANCE COMPANY,
Defendant, Cross-complainant and Respondent.

COUNSEL

R. W. Levy for Plaintiffs, Cross-defendants and Appellants.

Stammer, McKnight, Barnum & Bailey and James N. Hays for Defendant, Cross-complainant and Respondent.

## OPINION

**BROWN (G. A.), P. J.**—This case involves the interpretation of liability insurance policies to determine the coverage afforded by them. The facts are stipulated and can be stated briefly.

Klink Citrus Association (hereinafter "Klink") owned a 1943 Burma jeep which had been converted into an agricultural chemical spray rig. It was not licensed, was used for spraying citrus groves, and was not operated on public roads for any purpose other than going to and coming from the groves and the repair shop.

On May 24, 1968, Steven D. Baker was driving the spray rig in the course of his employment for Klink on a public road, returning to the Klink plant from a spray job. George Burkett, a fellow employee of Baker, who was riding on the jeep in the course of his employment for Klink, fell under the wheels of the vehicle, sustaining injuries which resulted in his death.

On December 27, 1968, the heirs of Burkett filed a wrongful death suit against Baker, William Jessup, Everett Standridge and Ted C. Bielefeldt, all employees of Klink, alleging Burkett's death was proximately caused by the reckless disregard for the safety of the decedent in the operation of the jeep (see Lab. Code, § 3601, subd. (a) (3), since repealed) by said fellow employees in the course of their employment for Klink. Klink was not a party to the action.

Cal-Farm Insurance Company (hereinafter "Cal-Farm") and Fireman's Fund Insurance Company (hereinafter "Fireman's") had issued policies of liability insurance to Klink. Farmers Insurance Exchange (hereinafter "Farmers") had issued a policy of automobile liability insurance to Standridge, and State Farm Mutual Insurance Company (hereinafter "State Farm") had issued policies of automobile liability insurance to Bielefeldt and to Jessup. All of said policies were in effect at the time of the accident.

Cal-Farm, Farmers and Fireman's undertook the defense of the wrongful death action pursuant to a reservation of rights agreement. The wrongful death action was eventually settled by contributions from those three companies and others not parties to this litigation. State Farm did not participate in the settlement. After the settlement this action was commenced by Cal-Farm and Farmers against Fireman's and State

Farm, seeking reimbursement for the amounts paid by them in the defense and settlement of the wrongful death suit and for attorneys' fees and costs they had expended. Fireman's cross-complained against Cal-Farm and Farmers for the amount it had expended in the defense and settlement of the third party suit.

After making its findings of fact and conclusions of law, the trial court entered judgment on November 12, 1973, in favor of Fireman's and State Farm and against Cal-Farm and Farmers on the complaint, in favor of Fireman's and against Cal-Farm only on the cross-complaint, and in favor of Farmers and against Fireman's on the cross-complaint.

Cal-Farm and Farmers have appealed only from that part of the judgment against them and in favor of Fireman's on the complaint and in favor of Fireman's and against Cal-Farm on the cross-complaint. Thus the judgment of the court that neither the Farmers' policy nor the State Farm policy afforded coverage is not in issue on this appeal. The issue therefore is narrowed to a determination of whether the Fireman's and Cal-Farm policies, or either of them, covered the accident in question. For the reasons about to be stated, we hold that the Fireman's policy does not afford such coverage and the Cal-Farm policy does and affirm the judgment.

### CAL-FARM POLICY

The policy issued by Cal-Farm was an automobile liability insurance policy issued to Klink as the named insured, in which the jeep spray rig was described as an owned vehicle. It insured Klink and any persons using the vehicle with the permission of the named insured. Thus the individual employees of Klink, defendants in the wrongful death suit, as permissive users of the jeep spray rig, were additional insureds and covered under the policy unless validly excluded by other provisions.

Cal-Farm relies upon an exclusion which provided that the policy did not apply: "(c) to bodily injury to any employee of either the named insured or any additional insured arising out of and in the course of employment, other than domestic, by the named insured or any additional insured, or in domestic employment if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, nor to any obligation for which the insured or any company as his insurer, may be held liable under any workmen's compensation law. . . ."

At all times relevant to this case Vehicle Code section 16454 provided: "Any motor vehicle liability policy need not cover any liability for injury to the assured or any liability of the assured assumed by or imposed upon the assured under any workmen's compensation law nor any liability for damage to property in charge of the assured or the assured's employees or agents."

This section is the statutory authority for the employee exclusion found in Cal-Farm's policy. The exclusion of employees from coverage constitutes an exception to the requirement that an automobile or motor vehicle liability policy cover permissive users of a covered vehicle. (*Key Ins. Exchange* v. *Washington* (1970) 7 Cal.App.3d 209, 213 [86 Cal.Rptr. 542]; see Veh. Code, § 16451; Ins. Code, § 11580.1; *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359].)

It is conceded that the decedent, Burkett, was covered by Klink's workers' compensation insurance and that his dependents received benefits as a result of his death.

■ Cal-Farm argues that in addition to the employer, Klink, who was not a defendant in the wrongful death suit, the exclusion also applies to the individual employees and that they are therefore not covered by the Cal-Farm policy. We do not agree.

Cases which have discussed an employee exclusion have held that the exclusion applies only to employees of persons sought to be held liable. Thus, in *U. S. Fire Ins. Co.* v. *Transport Indem. Co.* (1966) 244 Cal.App.2d 110, 116 [52 Cal.Rptr. 757], it is said: "The *Pleasant Valley* case, *supra,* 142 Cal.App.2d 126, involved a somewhat similar provision. That policy excluded coverage for bodily injury to any employee of the insured while engaged in the employment . . . of the insured and to any obligation for which the insured or any company as his insurer might be held liable under any workmen's compensation law. The opinion in that case stated that the exclusionary clause meant only that coverage did not apply to any one with the right to protection under workmen's compensation laws or, in other words, that the clause excluded coverage only in those instances in which the injured party was an employee of the *particular* insured—whether *named insured* or *additional insured*—seeking protection under the policy." (See also *State Farm Mut. Auto. Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193, 204 [110 Cal.Rptr. 1, 514 P.2d 953]; *Indemnity Ins. Co.* v. *Pacific Clay Products Co.* (1970) 13 Cal.App.3d 304, 312 [91 Cal.Rptr. 452]; *Campidonica* v. *Transport Indemnity Co.* (1963)

217 Cal.App.2d 403, 407 [31 Cal.Rptr. 735]; *Pleasant Valley Assn.* v. *Cal-Farm Ins. Co.* (1956) 142 Cal.App.2d 126, 131-134 [298 P.2d 109].) It follows that since the additional assured employees under Cal-Farm's policy were not employers of the decedent, Burkett, and are not liable under any workers' compensation law for his death, the exclusion did not eliminate coverage as to them.

It is true, as Cal-Farm argues, that the exclusion in the policies involved in those cases excluded coverage for bodily injury to any employee of the insured while engaged in his employment, whereas Cal-Farm's policy in this case excluded coverage ". . . to any employee of either the named insured or any additional insured arising out of and in the course of employment. . . ." Thus, Cal-Farm has added to the exclusion any employee of "any additional insured." The language, however, is too clear to require interpretation. We cannot perceive how, under the facts of this case, adding to the exclusion an employee of an additional insured can possibly change the result arrived at in the cases cited. This necessarily follows since the decedent, Burkett, was not an employee of his fellow employee additional insureds and the fellow employees were not liable under the workers' compensation laws.

Having concluded that the exclusion does not by its terms apply to the employees, we need not decide whether a policy could validly exclude coverage under the Financial Responsibility Law (Veh. Code, §§ 16451, 16454) to an employee who is not liable under the workers' compensation law to the injured claimant or his heirs. (See *Saala* v. *McFarland* (1965) 63 Cal.2d 124, 128 [45 Cal.Rptr. 144, 403 P.2d 400]; *Rollo* v. *Cal. State Automobile Assn.* (1958) 159 Cal.App.2d 172 [323 P.2d 531].)

## FIREMAN'S POLICY

Fireman's policy was denominated a "Comprehensive Liability Policy," which afforded under Coverage A "Bodily Injury Liability—Automobile" and under Coverage B "Bodily Injury Liability—Except Automobile." It named Klink as the named insured and excluded coverage for automobiles owned by the named insured. The policy defined "automobile" as ". . . the word 'automobile' means a land motor vehicle. . . ." It then described in three separate subheadings an owned automobile, a hired automobile and a nonowned automobile. The definition then continued: "The following described equipment shall be deemed an automobile while towed by or carried on an automobile not so described, but not otherwise: if of the crawler-type, any tractor, power

crane or shovel, ditch or trench digger; any farm-type tractor; any concrete mixer other than of the mix-in-transit type; any grader, scraper, roller or farm implement; and, if not subject to motor vehicle registration, any other equipment not specified below, which is designed for use principally off public roads. The following described equipment shall be deemed an automobile while towed by or carried on an automobile as above defined solely for purposes of transportation or while being operated solely for locomotion, but not otherwise: if of the non-crawler type, any power crane or shovel, ditch or trench digger; and any air-compressing, building or vacuum cleaning, spraying or welding equipment or well drilling machinery."

Since the jeep spray rig was owned by Klink, the crucial question is whether the vehicle was an "automobile" within the contemplation of this definition, thus being excluded from coverage under the Fireman's policy.

It is to be noted that "spraying . . . equipment" is expressly referred to in the second full sentence of the above description and is "deemed an automobile . . . while being operated solely for locomotion." There is no dispute that the spray rig was being operated solely for locomotion at the time of the accident; hence, it is expressly within the definition of an "automobile" under Fireman's policy. Cases which have interpreted the language of the foregoing exclusion are in accord with this interpretation and make clear that the pivotal question is whether the equipment specifically listed in the second full sentence under the "non-crawler type" was being operated for locomotion or whether it was stationary. (See *Donahue Constr. Co. v. Transport Indem. Co.* (1970) 7 Cal.App.3d 291 [86 Cal.Rptr. 632]; *Home Indem. Co. v. Transport Indem. Co.* (1968) 263 Cal.App.2d 100 [69 Cal.Rptr. 504]; *Industrial Indem. Co. v. General Ins. Co.* (1962) 210 Cal.App.2d 352 [26 Cal.Rptr. 568].)

Cal-Farm argues that the following phrase in the first full sentence of the paragraph controls: ". . . and, if not subject to motor vehicle registration, any other equipment not specified below, which is designed for use principally off public roads." It contends that the jeep rig was not subject to registration and was designed for use principally off public roads and was therefore not an automobile and not excluded from coverage because the sentence makes no distinction as to whether the vehicle is being operated for locomotion or is stationary. The difficulty with this interpretation is that it ignores the plain language of the quoted sentence which excepts "any other equipment not specified below. . . ."

Specified below in the definition is spraying equipment while being operated solely for locomotion. ■ It is elementary that the specific provision prevails over the general. (*Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 35 [17 Cal.Rptr. 12, 366 P.2d 455].)

Cal-Farm's reliance on *California Packing Corp.* v. *Transport Indem. Co.* (1969) 275 Cal.App.2d 363 [80 Cal.Rptr. 150] is misplaced. A forklift was involved in that case, and the policy definition of "automobile" was identical to the definition in Fireman's policy. However, as distinguished from "spraying . . . equipment" in the instant case, a "forklift" is not included in the description of equipment deemed to be an automobile under the second full sentence of the definition. Consequently, the sole question before the court was whether it was equipment designed for use principally off public roads and was not subject to motor vehicle registration. (See 275 Cal.App.2d at p. 367.) The court found that since the forklift was subject to registration it was an insured automobile. In this respect the court stated: "The Fund's policy insures against liability arising out of the use of any *'automobile.'* It then proceeds to define that term rather enigmatically. Our best effort to understand this definition and apply it to the facts and circumstances of the instant case leads us to this meaning: An insured automobile is an owned automobile or land motor vehicle, unless it is equipment designed for use principally off public roads and is not subject to motor vehicle registration." (275 Cal.App.2d at pp. 366-367; fns. omitted.)

Cal-Farm next contends that though the jeep spray rig was not an automobile under Fireman's coverage "A"—"Bodily Injury Liability—Automobile," coverage is provided under the comprehensive liability coverage "B"—"Bodily Injury Liability—Except Automobile." Under exclusion (d) of that coverage, the policy provided:

"This policy does not apply:

"
.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(d) under coverage . . . B . . . to the ownership, maintenance, operation, use, loading or unloading of . . . (2) automobiles [defined as land motor vehicles] if the occurrence or accident occurs away from such premises or the ways immediately adjoining. . . ."

■ Cal-Farm argues that the exclusion applies only to "automobiles" and not to motor vehicles. Since the spray rig was a "motor vehicle"

under Vehicle Code sections 415,[1] 670[2] (see *Donahue Constr. Co. v. Transport Indem. Co., supra,* 7 Cal.App.3d at p. 300) and 16451[3] (see *Wildman v. Government Employees' Ins. Co., supra,* 48 Cal.2d 31) and under the provisions of Insurance Code section 11580.1 as it then read,[4] Fireman's was required to afford coverage to all permissive users of the motor vehicle, including the employees of Klink who were permissive users of the equipment. With this syllogistic reasoning Cal-Farm attempts to convert Fireman's comprehensive liability policy for "Bodily Injury Liability—Except Automobile" into an automobile or motor vehicle liability policy. The effort must fail.

In *Herzog v. National American Ins. Co.* (1970) 2 Cal.3d 192 [84 Cal.Rptr. 705, 465 P.2d 841] and *Huggins v. Yoshiwara* (1970) 2 Cal.3d 200 [84 Cal.Rptr. 709, 465 P.2d 845], the Supreme Court was confronted with language identical to that contained in exclusion (d) of Fireman's policy *(ante)* and a contention equivalent to that being made by Cal-Farm in the case at bench. In the *Herzog* case the court concluded: "The fact that a homeowner's policy provides coverage for automobile-related accidents on the 'ways immediately adjoining' the insured premises does not transform that policy into an automobile or motor vehicle liability policy subject to the *Wildman* [*Wildman v. Government Employees' Ins. Co.* (1957) 48 Cal.2d 31] principle." (2 Cal.3d at p. 198; fn. omitted.)

[1] Vehicle Code section 415 provides: "A 'motor vehicle' is a vehicle which is self-propelled."

[2] Vehicle Code section 670 provides: "A 'vehicle' is a device by which any person or property may be propelled, moved, or drawn upon a highway, excepting a device moved by human power or used exclusively upon stationary rails or tracks."

[3] Vehicle Code section 16451 provides in pertinent part: "An owner's policy of motor vehicle liability insurance shall insure the person named therein and any other person, as insured, using any owned motor vehicle with the express or implied permission of said assured, against loss from the liability imposed by law for damages arising out of ownership, maintenance, or use of such motor vehicle within the continental limits of the United States. . . ."

[4] Insurance Code section 11580.1 read in pertinent part:

"No policy of liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be issued or delivered in this state to the owner of a motor vehicle, or shall be issued or delivered by any insurer licensed in this state, upon any motor vehicle then principally garaged or principally used in this state unless it contains the following provisions:

". . . . . . . . . . . . . . . . . . . .

"(d) Provision insuring the insured named therein and to the same extent that coverage is afforded such named insured in respect to said described motor vehicles, any other person using, or legally responsible for the use of, said motor vehicles, provided the motor vehicles are being used by the named insured or with his permission, express or implied." (See Stats. 1965, ch. 1968, § 1, p. 4496.)

*Herzog* and *Huggins* are dispositive of Cal-Farm's contentions in this regard. (See also *Dillon* v. *Hartford Acc. & Indem. Co.* (1974) 38 Cal.App.3d 335, 345 [113 Cal.Rptr. 396].)

The judgment is affirmed.

Gargano, J., and Franson, J., concurred.