[Civ. No. 3301. Fifth Dist. June 2, 1978.]

PACIFIC INDEMNITY COMPANY, Plaintiff and Respondent, v.
TRANSPORT INDEMNITY COMPANY, Defendant and Appellant.

650

COUNSEL

Stammer, McKnight, Barnum & Bailey and Dean A. Bailey for Defendant and Appellant.

McCormick, Barstow, Sheppard, Coyle & Wayte, Harry A. Allen and James P. Wagoner for Plaintiff and Respondent.

OPINION

FRANSON, Acting P. J.—

### STATEMENT OF THE CASE AND FACTS

This is an appeal from a judgment in a declaratory relief action in which respondent Pacific Indemnity Company (Pacific) seeks recovery from appellant Transport Indemnity Company (Transport) of the amounts it paid in settlement of a personal injury action and the legal expenses and costs incurred in connection therewith.

On May 26, 1970, William E. Baker was employed as a lumber truck driver by American Transfer Company (American Transfer). He drove his employer's truck loaded with lumber onto the premises of American Forest Products Company (American Forest) where Martin Gallegos, an employee of American Forest, using a forklift vehicle owned by American Forest, undertook to unload the lumber from the American Transfer truck. While Gallegos was doing so, some of the lumber fell

upon Baker and injured him. Both Gallegos and Baker were acting in the course and scope of their employment for their respective employers at the time.

On the date of the accident, there was in effect a motor vehicle liability insurance policy issued by Pacific to American Forest, insuring American Forest and its employees. On the same date there was in effect a motor vehicle liability insurance policy issued by Transport to American Transfer, insuring American Transfer and its employees.

On June 9, 1970, Baker filed suit in the Fresno County Superior Court against American Forest and Gallegos, seeking damages on account of his injuries. Pacific requested Transport to undertake the defense of American Forest and Gallegos, but Transport declined to do so. Pacific thereupon defended the action and ultimately made a compromise settlement by the payment of $90,000 to Baker in exchange for a release and dismissal of the action with prejudice. Pacific also incurred reasonable attorneys' fees and costs of $5,024.25 in defending the action.

Thereafter, Pacific filed this action. The case was tried without a jury and resulted in a judgment in favor of Pacific and against Transport in the amount of $26,578.36 plus costs of suit of $46.50. Transport has appealed.

## DISCUSSION

Transport first contends that the trial court erred in finding that its policy provided coverage to American Forest and Gallegos as permissive users of the truck. Although conceding that at the time of Baker's injuries American Forest and Gallegos were using the truck with the permission of its owner, Transport argues that American Forest and Gallegos were specifically excluded from coverage under the policy provision which provided: "This policy does not apply to any liability for bodily injury, . . . of *any employee of any Insured* arising out of and in the course of his employment by any Insured, . . ." (Italics added.)

Transport argues that coverage was excluded because Baker was an employee of American Transfer, its named insured, at the time of his injury. Pacific argues and the trial court found that the exclusionary clause only applies to injured employees of an insured who is seeking protection under the policy; since Baker was not an employee of American Forest, the company which is seeking coverage under the

policy, the exclusion does not apply. We conclude that Pacific's argument and the trial court's decision accord with the established law in California; hence, we affirm the finding that American Forest and Gallegos were additional insureds who were covered by Transport's policy.

The seminal case in California interpreting an employee exclusion clause is *Pleasant Valley Assn.* v. *Cal-Farm Ins. Co.* (1956) 142 Cal.App.2d 126 [298 P.2d 109]. United States Fidelity and Guaranty Company had issued a liability insurance policy to the Pleasant Valley Lima Bean Growers and Warehouse Association. Cal-Farm had issued a liability insurance policy to Brucker. Nungaray, an employee of Brucker, drove a Brucker truck filled with lima beans to Pleasant Valley's warehouse for unloading. Nungaray was subsequently injured in the unloading process as a result of the negligence of Croker, an employee of Pleasant Valley. Cal-Farm denied coverage for the accident, citing an exclusion in its policy for " '. . . bodily injury to, . . . any employee of *the* insured, while engaged in the employment, . . .' " (Italics added, *id.,* at p. 129.) Cal-Farm contended that the reference to "the insured" in the exclusion clause referred to only the named insured and that since Nungaray was the named insured's (Brucker's) employee, there was no coverage.

The court rejected this interpretation, holding that the clause only excludes coverage when the injured party is the employee of the insured who is seeking protection under the policy. Since Nungaray was not employed by Pleasant Valley or Croker, the exclusion was inapplicable. The court noted that any ambiguity in the exclusion's language must be resolved against the drafter. Since the exclusion was ambiguous ("the" insured could mean either the named insured or any insured under the policy who is seeking coverage), the court favored the interpretation which provided coverage. The court next observed that any liability of Brucker for injury to his employee Nungaray would be under workmen's compensation laws and clearly was one that was expressly excluded from coverage. Following the blanket exclusion of "any employee of the insured" was the language " '. . . or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law.' " (*Id.,* at p. 133.) The clause further excluded " '. . . any obligation for which the insured . . . may be held liable under any workmen's compensation law.' " (*Ibid.*)[1] The court then

---

[1] As in *Pleasant Valley,* the policy in the present case specifically excludes any liability "arising under any statutory employee benefit law."

stated: "The exclusion clause must be read as a whole and we think leads inescapably to the conclusion that it means only that the coverage, whether of the named or additional insured, does not apply to anyone who has liability under workmen's compensation laws. As Pleasant Valley and Croker are additional insureds under defendant's policy, and as there is nothing in the record to show that either Croker or Pleasant Valley is obligated to Nungaray under workmen's compensation law, with respect to the accident, it is clear that Pleasant Valley and Croker are not excluded from policy protection as to an action brought by Nungaray against them for personal injuries." (*Id.,* at p. 134.)

We learn from *Pleasant Valley* (*id.,* at p. 134) the critical importance of the employment relationship between the injured employee and the insured seeking coverage under the policy insofar as interpreting the exclusion clause. Absent such a relationship the exclusion does not apply.

The *Pleasant Valley* restrictive interpretation of the employee-insured exclusion has been consistently followed in California. It is well settled that the employment relationship referred to in the exclusion clause "... must exist between the injured employee and the party seeking protection of the policy ...." (*Paul Masson Co.* v. *Colonial Ins. Co.* (1971) 14 Cal.App.3d 265, 270 [92 Cal.Rptr. 463].) In *U.S. Fire Ins. Co.* v. *Transport Indem. Co.* (1966) 244 Cal.App.2d 110, 117 [52 Cal.Rptr. 757], it is stated: "[A]n exclusionary clause of this type applies only when the injured party was employed by the particular named insured, or an additional insured, who seeks the protection of the policy." (See also *Cal-Farm Ins. Co.* v. *Fireman's Fund Ins. Co.* (1976) 54 Cal.App.3d 708, 712 [126 Cal.Rptr. 704]; *United States Steel Corp.* v. *Transport Indem. Co.* (1966) 241 Cal.App.2d 461, 473-474 [50 Cal.Rptr. 576]; *Campidonica* v. *Transport Indemnity Co.* (1963) 217 Cal.App.2d 403, 407 [31 Cal.Rptr. 735].) The employee relationship is irrelevant when the injured party is not an employee of the one seeking the policy's protection. (See *State Farm Mut. Auto. Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193, 212-213 [110 Cal.Rptr. 1, 514 P.2d 953], dis. opn. of Sullivan, J.)

The *Pleasant Valley* rationale has been adopted by the Legislature in Insurance Code section 11580.1 enacted in 1970. This statute authorizes only limited exclusions, including one for "[l]iability for bodily injury to any employee of *the insured* arising out of and in the course of his employment." (Italics added; § 11580.1, subd. (c)(4).) Paragraph (8) of 11580.1, subdivision (c) further provides "[t]he term 'the insured' as used in paragraph ... (4) of this subdivision shall mean only that insured

under the policy against whom the particular claim is made or suit brought." Although the statute is not applicable to this case because Pacific's policy was issued before its enactment, it demonstrates the public policy in restricting the exclusion.

Transport attempts to distinguish its exclusion from that in *Pleasant Valley* and its progeny on the basis that while an exclusion for injuries to an employee of "the" insured may be ambiguous, an exclusion for injuries to "any" insured absolves it of liability whenever the injured party is an employee of any insured within the policy, regardless of whether that insured is seeking the policy's protection. Transport cites three cases in support of its position: *California State Auto. Assn. Inter-Ins. Bureau* v. *Warwick* (1976) 17 Cal.3d 190, 195 [130 Cal.Rptr. 520, 550 P.2d 1056]; *Civil Service Employees Ins. Co.* v. *Klapper* (1976) 59 Cal.App.3d 918 [130 Cal.Rptr. 921] and *State Farm Mut. Auto. Ins. Co.* v. *Hartle* (1976) 59 Cal.App.3d 852 [131 Cal.Rptr. 141]. These cases, however, are inapposite. All three involved a single insurance policy issued to the owner of the car. The question was the meaning of a clause excluding coverage for injuries to "any insured." In this context any lay interpretation of the phrase "any insured" would exclude coverage. Manifestly, such a phrase has a far different meaning in the context of a vehicle owner exclusion.

Even accepting Transport's argument that an ambiguity must exist in the wording of the exclusion before coverage may be found, such an ambiguity is present. The phrase "any employee of any insured" is susceptible to two interpretations: it could mean any employee of any insured who is seeking protection under the policy or it could mean any employee of any insured under the contract, whether or not that insured is seeking protection under the policy. It is unnecessary to show which interpretation is more logical. (*Pleasant Valley Assn.* v. *Cal-Farm Ins. Co.,* supra, 142 Cal.App.2d 126, 133.) Since the clause is susceptible to more than one interpretation, it should be construed narrowly to provide for coverage. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 102 [109 Cal.Rptr. 811, 514 P.2d 123].)

■ Transport's attempt to avoid coverage to American Forest and Gallegos blandly ignores the strong public policy favoring coverage for permissive users of motor vehicles. (Veh. Code, § 16451; Ins. Code, § 11580.1, subd. (b)(4); *Metz* v. *Universal Underwriters Ins. Co.* (1973) 10 Cal.3d 45, 50 [109 Cal.Rptr. 698, 513 P.2d 922]; *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 39 [307 P.2d 359].) Although the

law permits an insurer to exclude liability assumed by or imposed upon an insured under any workers' compensation law (Veh. Code, § 16454; Ins. Code, § 11580.1, subd. (c)(3)), presumably because the injured employee will receive compensation for his injuries under those laws, it does not permit exclusion of coverage to a permissive user for injuries to those who are not his employees. ■ Transport's argument that policy considerations are not involved because the suit is between two insurers to determine which should bear the cost of Baker's injuries, is patently wrong. Pacific's coverage is irrelevant in determining the fact of Transport's coverage; the existence of other insurance is pertinent only to the question of proration. Since the exclusion in no way is conditioned upon the presence or absence of other insurance, it must be construed in the light of the policy favoring coverage for permissive users. This we have done.

TRANSPORT HAS A PRO RATA COVERAGE
OBLIGATION BECAUSE PACIFIC'S
POLICY CONTAINS AN EXCESS CLAUSE

■ The Transport policy is expressly denominated excess in occurrences also covered by other insurance. Pacific's policy provides:

"*Other Insurance*:

"(a) The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance." (Italics in original.) Transport argues that Pacific is primarily liable for the entire loss and therefore obligated to cover the entire $90,000 settlement with Baker.

However, a subsequent provision in Pacific's policy provides: "(c) When both this insurance and other insurance apply to the loss, whether on the same basis or otherwise, and all of the policy forms of such other insurance do not contain a 'Contribution by Equal Shares' provision similar to paragraph (b)(1) above, this insurance shall be excess over any other valid and collectible insurance available to the *insured.*" (Italics in original.) Since this paragraph clearly indicates that each policy had an effective excess clause, the liability must be prorated according to the

amount of coverage of each policy. (*Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 507 [99 Cal.Rptr. 617, 492 P.2d 673].)

### THE PRORATABLE AMOUNT OF TRANSPORT'S COVERAGE IS THE $10,000 POLICY LIMIT, NOT THE $100,000 PUC ENDORSEMENT LIMIT

■ The Pacific policy provides coverage in the amount of $250,000. Transport's policy limit is $10,000; however, the policy also contains a Public Utilities Commission endorsement which increased the limit to $100,000. The endorsement contains the following qualifying language: "Within the limits of liability hereinafter provided it is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability hereunder or from the financial responsibility or lack thereof or insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the insured and the Company, *and the insured agrees to reimburse the Company . . . for any payment that the Company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.*" (Italics added.) Transport persuasively argues that the proration in this case should be based upon the $10,000 limit in the policy since if it is obligated to pay any amount on behalf of American Forest and Gallegos, they are required to reimburse Transport for any sum exceeding $10,000.

■ The legislative purpose of the mandatory PUC endorsement is to protect the public against reckless operation of vehicles by financially irresponsible owners and to provide a means of recovery for persons injured by such operation. (*Argonaut Ins. Co.* v. *Transport Indem. Co.*, *supra*, 6 Cal.3d 496, 504.) ■ Since Pacific's policy was more than sufficient to cover the liability for Baker's injuries, applying the PUC endorsement to increase Transport's pro rata liability in no way furthers the underlying purpose of the statute. ■ As long as the public is secure in the prescribed minimum coverage, the insured and its insurer and other insurers are free to adjust and limit their roles by contract. (*Id.,* at p. 504.) ■ The endorsement expressly provides that all policy terms are to remain in effect.

Respondent cites *Travelers Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 514 [99 Cal.Rptr. 627, 492 P.2d 683] in support of the trial court's finding that the proratable amount of appellant's coverage is $100,000. In that case defendant Transport's basic coverage was $10,000, which was expanded to $100,000 by virtue of a PUC endorsement. The court stated: "As hereinabove indicated, plaintiffs' policy provides coverage for $1,000,000, and defendant's policy provides coverage for $100,000. Plaintiffs are therefore chargeable with ten-elevenths of the amount of the settlement and costs, and defendant is chargeable with one-eleventh thereof." (*Id.*, at p. 517, fn. omitted.) However, this statement is clear dictum. The sole question before the court was whether the PUC endorsement vitiated the "excess" other insurance clause in the Transport policy. The opinion contains no discussion of the issue in the present case.

█ Moreover, an examination of the petition for a hearing before the Supreme Court in *Travelers Ins. Co.* v. *Transport Indem. Co.* reveals that the parties had agreed that the PUC endorsement increased the coverage; whether the proratable amount of Transport's coverage was the $10,000 basic coverage or the $100,000 endorsement coverage was not before the court.[2]

█ We hold that the clear language of the PUC endorsement must be given effect in prorating the coverage between concurrent insurers of the same accident. The basic policy limits should be utilized in the proration process, not the additional PUC endorsement limit. Therefore, the trial court should have prorated the coverage liability on the basis of Transport's policy limit of $10,000.

The judgment is reversed, and the cause is remanded to the trial court with directions to recalculate Pacific's damages based on Transport's policy limit of $10,000. In all other respects the judgment is affirmed.

Hopper, J., and Nairn, J.,* concurred.

A petition for a rehearing was denied June 28, 1978, and respondent's petition for a hearing by the Supreme Court was denied July 27, 1978.

---

[2]Reference to briefs is a permissible method of ascertaining what issues were before a court (see *Moore* v. *Superior Court* (1970) 13 Cal.App.3d 869, 874 [92 Cal.Rptr. 23]).

*Assigned by the Chairperson of the Judicial Council.